1
2
3
4
5       IN THE UNITED STATES DISTRICT COURT FOR THE
6             EASTERN DISTRICT OF CALIFORNIA
7
8    **RICHARD ALLEN WISLER,**          )    **CV F 06-1694 AWI SMS**
                                        )
9                    **Plaintiff**,     )    **ORDER ON DEFENDANTS'**
                                        )    **MOTION FOR SUMMARY**
10         **v.**                       )    **JUDGMENT**
                                        )
11   **CITY OF FRESNO, et al,**         )
                                        )
12                   **Defendants.**    )
     _____   )
13
14
15        This is a civil rights case that arises from an encounter between Plaintiff Richard Wisler

16   ("Wisler") and police officers from the City of Fresno ("Fresno").  Wisler has brought suit

17   against Officer Jonathon Long ("Long") and Fresno (or collectively "Defendants")[1] under 42

18   U.S.C. § 1983 and corresponding state law causes of action that are predicated on excessive

19   force.   Defendants move for summary judgment on all claims.  For the reasons that follow,

20   Defendants' motion for summary judgment will be granted in part and denied in part.

21

22                      _____   **BACKGROUND**[2]

23        On February 4, 2006, Reserve Sergeant George Jones ("Jones"), Officer Jeffrey Logue

24   ("Logue"), and Long responded to a report that a drunk driver in a black BMW was hitting curbs

25   and driving into objects.  DUMF No. 1.  When the officers arrived, they observed the BMW on

26   the center divider at Milburn and Herndon roads and saw smoke and debris coming from the car.

27   _____

28        [1]The operative complaint is the First Amended Complaint, which named does, Long, Logue, Jones and
     Fresno as Defendants.  Logue and Jones have been dismissed.  Long and Fresno are the only remaining defendants.

          [2]"DUMF" refers to Defendants' Undisputed Material Facts.  "PUMF" refers to Plaintiff's Undisputed
     Material Facts.

1    DUMF No. 2.  Long, who was driving his patrol vehicle with Jones, placed his patrol car

2    approximately 15 feet behind the BMW, turned on the overhead lights and siren, and pointed his

3    spotlight on the car.  DUMF No. 3.  The driver of the BMW, Wisler, was aware that police

4    officers wanted him to pull over, but he did not stop and instead put the vehicle in reverse, drove

5    backwards off the median towards the officers, and then proceeded north.  See DUMF No. 4.[3]

6        The BMW continued swerving back and forth as it made several turns.  DUMF No. 5.

7    Long grabbed the public address system, spoke clearly on the highest volume, identified himself

8    as Fresno Police, and ordered Wisler to "pull over" and "stop now."  See id.  Wisler failed to

9    comply.  See id.  As the officers continued to follow with lights and sirens, Wisler turned west

10   and increased his speed to 25 miles per hour.  See DUMF No. 6.[4]  The BMW then hit a corner

11   and drove over the curb.  See id.  Long and Jones exited the patrol car, and Jones ran toward the

12   BMW with his weapon drawn in an attempt to make a high risk stop.  See id.  At that point,

13   Wisler put his car in reverse backing towards Jones.  See id.  The BMW then went forward again

14   and proceeded southbound.  See id.  Logue drove around Long's vehicle and, with overhead

15   lights and siren on, followed Wisler.  DUMF No. 7.

16       Wisler eventually pulled into his driveway, where he opened the garage door.  See DUMF

17   No. 8.  As he drove the car into the garage, his car hit a shelving unit on the right side of the

18   garage, causing damage to the car.  See id.  Wisler has no recollection of anything that occurred

19   from the time he pulled into his garage until the time he was sitting handcuffed, including the car

20   door opening and exiting the vehicle.  See DUMF No. 9.[5]

21

22       [3]Wisler disputes DUMF No. 4 by stating that he was in a frightened state of mind and he thought it would
     be safer to drive home.  See Wisler Depo. at 40.  However, Wisler also stated that he understood that police officers

23   wanted to him to pull over.  See id. at 39.  His reason for not stopping does not change the fact that he
     understood that the officers wanted him to stop.  DUMF No. 4 is established.

24       [4]Wisler disputes DUMF No. 6, in part, by arguing that Wisler was going between 15 and 20 m.p.h.

25   However, the deposition excerpts cited by Wisler himself estimate the speed at a maximum level of 25 m.p.h.  See
     Long Depo. at 43:1; Logue Depo. at 16:5; Jones Depo. at 8:24.  Moreover, it is immaterial whether Wisler was

26   traveling 20 m.p.h. or 25 m.p.h.  Wisler also objects to the phrase "hit the gas."  This is another immaterial dispute,
     but the Court will nevertheless change the wording to "increased his speed."  As such, DUMF No. 6 is established.

27       [5]Wisler disputes this by stating he recalls sitting in his vehicle after parking in the garage, he was aware of

28   the officers' presence due to their lights, but he does not recall hearing instructions.  See Wisler Depo. at 41-42.
     However, when asked, "And you have no recollection of anything that occurred from the time you pulled in your

2

1   The officers exited their vehicles, set up a high risk stop, and ordered Wisler multiple

2   times to exit his vehicle.  See DUMF No. 10.[6]  When Wisler did not comply, Long and Logue

3   approached the BMW from the driver's side and Jones approached from the passenger side.  See

4   id.  Long loudly gave verbal commands to Wisler to exit the vehicle and show his hands.  See id.

5   Wisler did not comply.  See id.  The officers had their guns drawn as they considered this to be a

6   high risk situation.  See id.  Long and Logue believed there was some exigency to getting Wisler

7   into custody because they did not know if anyone else was in the house that might come out and

8   try to interfere, although they did not so indicate in the police report.  See Long Declaration at ¶

9   6; Logue Declaration at ¶ 5; see also DUMF No. 11 & Plaintiff's Response DUMF No.11.[7]

10   When the officers attempted to remove Wisler from the car, Wisler tried to pull his arms

11   away.  See DUMF No. 12.[8]  Logue was able to undo his seatbelt and then he and Long physically

12   pulled him out of the car and got him onto the garage floor in order to handcuff him and place

13   him under arrest.  See id.  Wisler initially went to the ground on his stomach, pulling his arms

14   underneath his body.  See DUMF No. 13.  Before the officers could get control of him, Wisler

---

garage until you were sitting handcuffed?," Wisler said, "That's correct."  See id. at 43.  DUMF No. 9 is established.

[6]Wisler disputes DUMF No. 10 by stating he could not hear Long's commands due to car noise and being shut in his car.  The only evidence Wisler cites states that he did not recall hearing commands, see Wisler Depo. at 42:3, it does not address any reasons why he may not have heard Long.  Wisler also states that the evidence does not indicate that the officers considered this a high risk situation because they rapidly approached the car.  No evidence is cited for this assertion.  In the opposition, it is noted that Roger Clark declared that the officers' rapid approach indicated that they did not believe Wisler had a weapon.  See Opposition at 2-3; Clark Declaration at ¶ 3.  However, there is no indication that "high risk" is the same as "has a weapon."  DUMF No. 10 is established.

[7]Wisler disputes the assertion by stating the neither Long nor Jones in their depositions indicated concern for someone else interfering.  Defendants responds that Jones and Long were not asked about this in their depositions.  Wisler has provided insufficient evidence to indicate a conflict between the declarations and the deposition.  Wisler also notes neither Long nor Logue indicated concern for interference in the police report.  This is true, but in the absence of evidence indicating that such an omission is significant, the Court will simply note that the report contains the omission.

[8]Wisler disputes this DUMF by stating that his hands were in view as the officers approached, and that Logue testified that Wisler was not struggling prior to or during the officers' attempt to remove him from the BMW.  However, that the officers could see Wisler's hands as they approached the vehicle in no way refutes DUMF No. 12.  As to Logue's testimony, Logue did testify that Wisler was not resisting when Wisler was *sitting* in the car.  See Logue Depo. at 20:6.  However, immediately after so testifying, in response to the question, "As you're pulling him out of the vehicle does he begin to struggle at any time?," Logue responded "Yes."  See id. at 20:7-19.  Logue then describes Wisler's resistance.  See id. at 20:10-19.  DUMF No. 12 is established.

1   rolled from his stomach to his back and continued to resist.[9]  See id.  As they tried to control

2   Wisler, he tensed his muscles and held his arms.  See id.  In an effort to restrain Wisler, Jones

3   grabbed Wisler's legs and Logue was at Wisler's head attempting to grab Wisler's right shoulder.

4   See DUMF No. 14.  With his left arm, Long grabbed Wisler's right arm and pinned it against

5   Wisler's chest.  See id.

6         At this point, there is a dispute.  Defendants maintain that Wisler reached up with his left

7   arm and grabbed inside of Long's thigh and onto Long's testicle, which caused Long instant and

8   severe pain.  See id.  Due to Long's body position, Long's fist was his only readily available

9   weapon.  See DUMF No. 15.  Long responded quickly by jabbing Wisler two to three times in

10  the face with his fist, as "distraction blows," in order to get Wisler to release his grip.  See id.

11  Long's decision to use his fist to strike Wisler was a reaction to the pain and there was no time

12  for Long to do anything else.  See DUMF No. 16.  After Wisler was handcuffed, Long walked

13  away and was bent over with his hands toward his groin and all of the color had left Long's face.

14  See DUMF No. 18.  Long told Jones and Logue that Wisler had grabbed his testicle.  See id.

15        In contrast, Wisler contends that, at the time Long alleges that Wisler grabbed Long's

16  testicle, Wisler's right arm was under Long's control and Wisler's left arm was behind Wisler's

17  back, and Logue did not see Wisler's arm come out from underneath Wisler's back until after

18  Long struck Wisler in the face.  See PUMF No. 3.  Further, Wisler contends that Long struck

19  Wisler three times in the face in order to gain compliance, not as a reaction to pain.  See PUMF

20  No. 2; Plaintiff's Response to DUMF No. 17.

21        Nevertheless, the parties appear to agree that, because of the way Long was positioned

22  over Wisler, neither Logue nor Jones saw Wisler grab Long's testicle, but at least Jones heard

23  Long groan.  See DUMF No. 17.[10]   Jones, who was positioned at Wisler's feet, did not observe

24  Long strike Wisler.  See id.  After the strikes, Wisler released his grip and was placed in

25  handcuffs.  See DUMF No. 15.

26  ─────────────────

27        [9]It does not appear that Wisler's resistance was assaultive in nature.

28        [10]DUMF No. 17 indicates that both Jones and Logue heard Long groan, and cite Jones's and Logue's
    respective declarations.  However, only Jones' declaration states that he heard Long groan.

1      A fist strike to the eye or to the area where Wisler was struck creates a risk of serious

2   injury to both Wisler and Long.  PUMF No. 5.  There was no time in the sequence of events from

3   the time the officers first fell behind Wisler to the time that he was handcuffed that "deadly

4   force" would have been justified.[11]  PUMF No. 6.

5      A toxicology report revealed that Wisler had a blood alcohol level of 0.38%.  See DUMF

6   No. 19.[12]  With this level of alcohol in his blood, Wisler would have been greatly intoxicated and

7   probably suffered irretrievable loss of short term memory.  See id.  Plaintiff pled no contest to

8   driving under the influence and to violation of Penal Code § 148(a)(1), resisting, obstructing, or

9   delaying a peace officer in the performance of his duties.  See DUMF No. 20.  Wisler was also

10  charged with violation of California Penal Code § 243(b), assaulting a peace officer, but that

11  charge was dismissed.  PUMF No. 1.

12     Fresno provides training to its officers that is in compliance with POST standards.  See

13  DUMF No. 29.  Pursuant to training and policy, Fresno police officers can use force to defend

14  themselves and others, effect an arrest or detention, prevent an escape, and overcome resistance.

15  DUMF No. 30.  The amount of force authorized by Fresno pursuant to its policy is that force

16  which is objectively reasonable under the circumstances.  See id.  Officers are trained in the

17  police academy and various on-going training that physical blows/strikes (including with hands),

18  may be appropriate depending on the circumstances.  See DUMF No. 31.  Police training

19  includes various "distraction" techniques, including those described in this case.  See id.  POST

20  does not preclude an officer from using fist strikes to the head if warranted by the circumstances.

21  See id.  Fresno police officers are required to attend a POST certified academy.  See DUMF No.

22

23      [11]Wisler has submitted proposed facts that deal with time lapses.  See PUMF Nos. 7 & 8.  Defendants
24  object that there is an insufficient foundation for this evidence, Roger Clark lacks knowledge on the subject, that the
    documents were not produced during discovery, and the documents are not what Plaintiff purports them to be.
25  Wisler has not responded to the objections.  Given the absence of a response, the Court will sustain Defendants'
    objections and will not consider PUMF Nos. 7 and 8.

26      [12]Wisler disputes this DUMF by stating he does not have short term memory loss regarding the incident and
27  that Alan Barbour was not disclosed as an expert witness.  However, there is no evidence cited by Wisler in support
    of his assertions.  Merely stating that a dispute exists does not create an actual dispute.  See Galen v. County of Los
28  Angeles, 477 F.3d 652, 658 (9th Cir. 2007).  Also, Barbour was disclosed as a non-retained expert.  See McGuire
    Reply Declaration Exhibit F.  DUMF No. 19 is established.

32.  Additionally, the officers receive ongoing training through Fresno which is in compliance with POST standards.  See id.  Fresno's use of force policy is consistent with state and federal law as well as the force policies of other police agencies in California.  See DUMF No.33.  Fresno Police Department administrative staff review and examine incidents in which force is used to determine whether the force used was reasonable in light of the circumstances facing the officers.  DUMF No. 34.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Adickes v. SH. Kress & Co., 398 U.S. 144, 157 (1970); Fortyune v. American Multi-Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir. 2004).  The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying the portions of the declarations (if any), pleadings, and  discovery that demonstrate an absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).  A fact is "material" if it might affect the outcome of the suit under the governing law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986); Thrifty Oil Co. v. Bank of America Nat'l Trust & Savings Assn, 322 F.3d 1039, 1046 (9th Cir. 2002).  A dispute is "genuine" as to a material fact if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party.  Anderson, 477 U.S. at 248; Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006).

Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the movant.  Soremekun, 509 F.3d at 984.  Where the non-moving party will have the burden of proof on an issue at trial, the movant may prevail by presenting evidence that negates an essential element of the non-moving party's claim or by merely pointing out that there is an absence of evidence to support an essential element of the non-moving party's claim.  See James River Ins. Co. v. Schenk, P.C., 519 F.3d 917, 925 (9th Cir. 2008); Soremekun, 509 F.3d at 984; Nissan Fire

1 & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1105-06 (9th Cir. 2000).  If a moving party fails

2 to carry its burden of production, then "the non-moving party has no obligation to produce

3 anything, even if the non-moving party would have the ultimate burden of persuasion."  Nissan

4 Fire & Marine Ins. Co. v. Fritz Companies, 210 F.3d 1099, 1102-03 (9th Cir. 2000).  If the

5 moving party meets it initial burden, the burden then shifts to the opposing party to establish that

6 a genuine issue as to any material fact actually exists.  See Matsushita Elec. Indus. Co. v. Zenith

7 Radio Corp., 475 U.S. 574, 586 (1986); Nissan Fire & Marine, 210 F.3d at 1103.  The opposing

8 party cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead

9 produce evidence that 'sets forth specific facts showing that there is a genuine issue for trial.'"

10 Estate of Tucker v. Interscope Records, 515 F.3d 1019, 1030 (9th Cir. 2008) (quoting Fed. R.

11 Civ. Pro. 56(e)).

12       The evidence of the opposing party is to be believed, and all reasonable inferences that

13 may be drawn from the facts placed before the court must be drawn in favor of the opposing

14 party.  See Anderson, 477 U.S. at 255; Matsushita, 475 U.S. at 587; Stegall v. Citadel Broad,

15 Inc., 350 F.3d 1061, 1065 (9th Cir. 2003).  Nevertheless, inferences are not drawn out of the air,

16 and it is the opposing party's obligation to produce a factual predicate from which the inference

17 may be drawn.  See Juell v. Forest Pharms., Inc., 456 F.Supp.2d 1141, 1149 (E.D. Cal. 2006);

18 UMG Recordings, Inc. v. Sinnott, 300 F.Supp.2d 993, 997 (E.D. Cal. 2004).  "A genuine issue of

19 material fact does not spring into being simply because a litigant claims that one exists or

20 promises to produce admissible evidence at trial."  Del Carmen Guadalupe v. Agosto, 299 F.3d

21 15, 23 (1st Cir. 2002); see Galen v. County of Los Angeles, 477 F.3d 652, 658 (9th Cir. 2007);

22 Bryant v. Adventist Health System/West, 289 F.3d 1162, 1167 (9th Cir. 2002).  Further, a

23 "motion for summary judgment may not be defeated . . . by evidence that is 'merely colorable' or

24 'is not significantly probative.'"  Anderson, 477 U.S. at 249-50; Hardage v. CBS Broad. Inc., 427

25 F.3d 1177, 1183 (9th Cir. 2006).  Additionally, the court has the discretion in appropriate

26 circumstances to consider materials that are not properly brought to its attention, but the court is

27 not required to examine the entire file for evidence establishing a genuine issue of material fact

28 where the evidence is not set forth in the opposing papers with adequate references.  See

1  Southern Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Carmen v. San

2  Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001).  If the nonmoving party fails

3  to produce evidence sufficient to create a genuine issue of material fact, the moving party is

4  entitled to summary judgment.  See Nissan Fire & Marine, 210 F.3d at 1103.

5

6  **DEFENDANTS' MOTION**

7  **I.    _Heck_ Bar**

8  _Defendants' Argument_[13]

9  Defendants argue that Wisler has pled guilty to a violation of California Penal Code §

10  148(a).  The plea papers indicate that the plea is based on the police report, which includes

11  Long's report of Wisler grabbing Long's testicle.  Thus, the plea is based in part on Wisler's

12  resistive and assaultive behavior against Long.  Allowing Wisler to proceed with this action

13  impermissibly casts doubt on his Penal Code § 148(a) conviction, which is contrary to _Heck_.

14  _Plaintiff's Opposition_

15  Wisler argues that he engaged in conduct that would fully constitute an offense under

16  Penal Code § 148(a) before he allegedly grabbed Long's testicle and before Long punched him

17  three times.  Since the prior conduct could support the Penal Code § 148(a) conviction, a

18  successful excessive force suit would not necessarily invalidate his conviction.

19  _Legal Standard_

20  The Supreme Court has held that, in order to recover damages for "harm caused by

21  actions whose unlawfulness would render a conviction or sentence invalid, a [42 U.S.C.] § 1983

22  plaintiff must prove that the conviction was reversed . . ., expunged . . ., declared invalid by a

23  [authorized] state tribunal . . ., or called into question by a federal court's issuance of a writ of

24  habeas corpus."  Heck v. Humphrey, 512 U.S. 477, 486 (1994).  Thus, "if a criminal conviction

25  arising out of the same facts stands and is fundamentally inconsistent with the unlawful behavior

26

27  [13]In their memorandum in support of summary judgment, Defendants did not expressly raise the issue of

28  _Heck v. Humphrey_'s application.  The issue was expressly raised for the first time in Plaintiff's opposition and Defendants replied.  Since the parties have raised and briefed the issue, the Court will address _Heck_'s application.

1   for which § 1983 damages are sought, the § 1983 action must be dismissed." Smith v. City of

2   Hemet, 394 F.3d 689, 695 (9th Cir. 2005) (en banc) (quoting Smithart v. Towery, 79 F.3d 951,

3   952 (9th Cir. 1996). Under *Heck*, "the relevant question is whether success in a subsequent §

4   1983 suit would 'necessarily imply' or demonstrate' the invalidity of the earlier conviction or

5   sentence . . ." Smith, 394 F.3d at 695; see Heck, 512 U.S. at 487.  A 42 U.S.C. § 1983 suit for

6   excessive force will not be barred by *Heck* if the allegedly excessive force occurred after the

7   conduct that formed the basis of the plaintiff's conviction.  See Marlow v. City of Orange, 2008

8   U.S. App. LEXIS 12854, *3-*5 (9th Cir. Cal. June 12, 2008); Smith, 394 F.3d at 693; Sanford v.

9   Motts, 258 F.3d 1117, 1120 (9th Cir. 2001).  In other words, where the plaintiff's crimes "could

10  have been based on acts that were complete before any alleged excessive force took place," *Heck*

11  will not bar a § 1983 excessive force claim.  Marlow, 2008 U.S. App. LEXIS 12854 at *4.

12          *Discussion*

13          Wisler has submitted a copy of his plea form.  See Coleman Exhibit K.  The plea form

14  indicates that Wisler would plead "no contest" to counts 1 (driving with a .15% or higher blood

15  alcohol level under Vehicle Code § 23578) and count 4 (obstructing, resisting, or delaying a

16  peace officer under Penal Code § 148(a)(1)).  See id.  Counts 2 and 3 were dropped.  See id.  Of

17  note, Count 3 alleged that Wisler assaulted Long.  See Coleman Exhibit J.  The factual basis on

18  the plea form states, "submitted on police reports as to ct 1 & count 4."  See Coleman Exhibit K.

19  The police report has been submitted to the Court and includes narratives from several officers,

20  including Logue and Long.  See Coleman Exhibit F.  The narratives are consistent with the

21  factual background described above: Wisler did not appear to be driving soberly, he refused to

22  stop despite efforts by the officers, he refused to get out of his car, he refused to let himself be

23  handcuffed, Long struck Wisler two to three times in the face, and then Wisler became

24  compliant.  See id.  Long's narrative indicates that Wisler grabbed Long's testicle, but Logue's

25  narrative does not mention this.  See id.  There are several instances described in the police report

26  that can support a conviction under Penal Code § 148(a).  Wisler refusing to stop his car and

27  instead driving home despite the officers' efforts to stop him, and his refusal to exit his car

28  despite the officers' commands are examples of conduct that could be considered obstructive and

9

delaying in violation of the penal code.  <u>See</u> Cal. Pen. Code § 148(a)(1); <u>cf.</u> <u>Yount v. City of</u> <u>Sacramento</u>, 43 Cal.4th 885, 894-95 (2008) (noting the elements of a crime under Penal Code § 148(a)(1)); <u>People v. Ritter</u>, 170 Cal.Rptr. 901, 903 (App. Dept. Super. Ct. 1980) (noting the interrelated relationship between Penal Code § 148 and Vehicle Code § 2800).  Importantly, both of these examples occurred prior to Long striking Wisler in the face, and Wisler does not sufficiently identify conduct other than Long's punches that could be excessive force.  <u>See</u> Discussion *infra*.  Further, the only conduct that could possibly form the basis of the assault charge was the same conduct that Long contends was the basis for his punches: Wisler grabbing Long's testicle.  The assault charge was dismissed, and Wisler did not admit to that charge.

It is not clear which conduct precisely formed the basis for Wisler's conviction under Penal Code § 148(a)(1), since the plea agreement makes only a general reference to the police report.  Because the police report shows conduct by Wisler prior to Long's punches that would constitute a violation of § 148,(a) and since Wisler did not plead "no contest" to the assault charge, a successful 42 U.S.C. § 1983 excessive force claim would not  necessarily imply or demonstrate the invalidity of Wisler's Penal Code § 148(a) conviction.[14]  <u>See</u> <u>Marlow</u>, 2008 U.S. App. LEXIS 12854 at *3-*5; <u>Smith</u>, 394 F.3d at 693; <u>Sanford</u>, 258 F.3d at 1120.  *Heck* does not bar Wisler's § 1983 excessive force claim.  <u>See</u> <u>id.</u>


**II.    Excessive Force**

*Defendants' Argument*

Defendants' argue that Long's use of force was reasonable.  Wisler grabbed Long's testicle and caused Long significant pain.  Wisler had not obeyed the officers at any point in the encounter and, due to the positioning of Wisler and Long, no other alternatives were available to Long other than punching or striking Wisler.  Alternatively, qualified immunity is appropriate because a reasonable officer in Long's place could reasonably believe that striking Wisler in the

---

[14]Defendants cite *Yount v. City of Sacramento*, 43 Cal.4th 885 (2008) to argue that Wisler is attempting to improperly segment the transaction that forms the basis of his conviction.  However, on this point, *Yount* is not binding authority, and *Marlow*, *Smith*, and *Sanford*, which are Ninth Circuit cases, compel a contrary result.

1   face two to three times was a reasonable response to the pain caused by Wisler's assault.

2   *Plaintiff's Opposition*

3   Wisler argues, *inter alia*, that there is a disputed issue of material fact whether Wisler

4   ever grabbed Long's testicle.[15]   Logue testified that Wisler's right hand was pinned down by

5   Long and Wisler's left hand was behind Wisler's back.  Only after Long's three strikes did

6   Wisler's left hand come out from behind Wisler's back.  Further, Logue's report does not

7   indicate that Wisler grabbed Long's testicle, but instead states that Long punched Wisler to gain

8   compliance.

9   *Legal Standard*

10  All claims that law enforcement officers used excessive force, either deadly or non-

11  deadly, in the course of an arrest, investigatory stop, or other seizure of a citizen are to be

12  analyzed under the Fourth Amendment and its standard of objective reasonableness.  See Graham

13  v. Connor, 490 U.S. 386, 395 (1989); Drummond v. City of Anaheim, 343 F.3d 1052, 1056 (9th

14  Cir. 2003).  The pertinent question in an excessive force case is whether the use of force was

15  "objectively reasonable in light of the facts and circumstances confronting [the officers], without

16  regard to their underlying intent or motivation."  Graham, 490 U.S. at 397; Blankenhorn v. City

17  of Orange, 485 F.3d 463, 477 (9th Cir. 2007).  The analysis of whether a specific use of force

18  was reasonable "requires a careful balancing of the nature and quality of the intrusion on the

19  individual's Fourth Amendment interests against the countervailing government interests at

20  stake."  Graham, 490 U.S. at 396; Blankenhorn, 485 F.3d at 477; Davis v. City of Las Vegas, 478

21  F.3d 1048, 1054 (9th Cir. 2007).  "We first assess the quantum of force used to arrest [the

22  plaintiff]" and then "measure the governmental interests at stake by evaluating a range of

23  factors."  Davis, 478 F.3d at 1054.  Factors that are considered in assessing the government

24  interests at stake include, but are not limited to, "the severity of the crime at issue, whether the

25

26  [15]Wisler states that the "excessive force complained of was applied after [he] was pulled from his car,

27  placed on the ground, and hit three times."  Plaintiff's Opposition at 6.  This statement is unclear since there is no
    evidence that any force was used after Wisler was hit three times.  The Court will assume that Wisler is also

28  complaining about Long's pulling him out of his car, placing him on the ground, and struggling with him as separate
    complaints from Long punching Wisler three times.

suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396; Blankenhorn, 485 F.3d at 477; Davis, 478 F.3d at 1054. Further, where it is or should be apparent that an individual is emotionally or mentally unstable, that is a factor that must be considered in determining the reasonableness of the force employed. See Drummond, 343 F.3d at 1058. "In some cases . . ., the availability of alternative methods of capturing or subduing a suspect may be a factor to consider." Smith v. City of Hemet, 394 F.3d 689, 701 (9th Cir. 2005). However, police officers "are not required to use the least intrusive degree of force possible" as long as the force actually used was reasonable. Forrester v. City of San Diego, 25 F.3d 804, 807 (9th Cir. 1994); see Gregory v. County of Maui, 523 F.3d 1103, 1107 (9th Cir. 2008). Reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396; Drummond, 343 F.3d at 1058. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396-97; Drummond, 343 F.3d at 1058. Since "[n]ot every push or shove, even if it may seem unnecessary in the peace of the judge's chambers, . . . violates the Fourth Amendment," Graham, 490 U.S. at 396, "[n]either tackling nor punching a suspect to make an arrest necessarily constitutes excessive force." Blankenhorn, 485 F.3d at 477. "Force is excessive when it is greater than is reasonable under the circumstances." Santos v. Gates, 287 F.3d 846, 854 (9th Cir. 2002). When the circumstances show that there is no need for force, any force used is constitutionally unreasonable. See Fontana v. Haskin, 262 F.3d 871, 880 (9th Cir. 2001); see also Motley v. Parks, 432 F.3d 1072, 1089 (9th Cir. 2005).

*Discussion*

With respect to the officers pulling Wisler from his car and struggling with him on the ground, the officers' conduct was reasonable. The nature of the force utilized by Long (excluding Long's punches) was very minor. Wisler was quickly removed from the car, placed on the ground, and Long attempted to handcuff Wisler and pinned one of Wisler's hands.

DUMF Nos. 12, 13, 14.  There were multiple crimes being investigated, but all appear to have been misdemeanors (drunk driving, resisting/obstructing/delaying an officer, etc.).  At the time the officers pulled Wisler out of his car, Wisler had not behaved in an assaultive manner towards the officers, but he had refused to comply with any demands by the officers, including stopping his vehicle and refusing to exit his vehicle after being told to do so, and his driving indicated that he was drunk.  DUMF Nos. 4, 5, 6, 10.  Further, Wisler was still in his car which could be used as a weapon or means of escape.  The danger posed by Wisler was somewhat uncertain because the officers had no face-to-face interaction with him.  Considering his conduct, the danger posed by Wisler was low to medium.  Given these considerations, the low amount of force utilized by Long (pulling Wisler out his car, placing him on the ground, and pinning one of Wisler's hands to Wisler's chest) was reasonable under the Fourth Amendment.

With respect to Long's punches, however, there is a genuine issue of disputed material fact.  On March 3, 2006, the Department of Motor Vehicles ("DMV") held a hearing for the suspension of Wisler's driver's license.  See Coleman Exhibit H.[16]  Logue was present, gave testimony under penalty of perjury, and was cross examined by Wisler's counsel.  See Lodged Transcript.  Logue testified that Long told him that Wisler had grabbed Long's testicle.  See id.  Thereafter, the following exchange occurred:

> **Q:** **Where were you at the time that [] Wisler was, as I understood it, on his back with his hands underneath him; is that correct?**
>
> A: One hand.
>
> **Q:** **All right, and one hand was . . . was under the control of [] Long?**
>
> A: According to [] Long, yes.
>
> **Q:** **Okay, which hand was that?**
>
> A: I do believe it was his right hand.
>
> **Q:** **Okay, so [] Wisler's hand was under the control of [] Long?**
>
> A: Correct, I was trying to - -

---

[16]Defendants have objected to Exhibit H as improperly authenticated.  Exhibit H is 10 pages from the DMV hearing.  Plaintiff lodged a copy of the entire transcript and the copy contains the stamp and signature of the DMV director and the signature of the transcriptionist.  Defendants' objection is overruled.

**Q:** **But wait a minute – . . . and his other hand was under his back, correct?**

A: Yes.

**Q:** **And you were able to observe this, correct?**

A: Well, I was trying to get his shoulders moved, so I was not able to observe his hands.

**Q:** **All right, did you see [] Wisler's hand come out form behind his back?**

A: Eventually.

**Q:** **All right, you saw [] Wisler's hand come out from behind his back, correct?**

A: Eventually.

**Q:** **The answer is yes or no, did you see [] Wisler's hand come out from behind his back?**

A: Yes.

**Q:** **Was it before or after the three . . . punches to the face of [] Wisler by [] Long?**

A: It was after.

**Q:** **All right, so the three punches to the face of [] Wisler were applied before or after [] Long had his, one of his hands under control?**

A: Both hands were not completely under control due to us trying to flip [] Wisler over on his stomach in order to get his hands behind his back so we can effect the arrest.  So not at one time were both hands completely under control.

**Q:** **All right, at the time [] Long applied the three punches to the face of [] Wisler, was he attempting to control one of [] Wisler's hands.**

A: Yes.

**Q:** **And the other hand was behind his back.**

A: I don't know where his other hand was, I'm assuming it was behind his back because that's where it came out of.

**Q:** **Okay, and did you ever see [] Wisler attempt to grab [] Long's testicles?**

A: No, I did not.

**Q:** **And you were . . . right there along with [] Long struggling with [] Wisler, correct?**

A: I was at the head portion of [] Wisler with my back towards [] Long, who was on the body portion of [] Wisler.

**Q:** **Did you ever hear [] Long yell in pain or anything like that?**

A:      He just said to, 'get off your hands, get off your hands,' that type of stuff – . . . nothing, nothing him screaming in pain, no.

**Q:      And nothing to indicate that [] Wisler had grabbed one of his testicles, correct?**

A:      Not that I could tell at the moment.

. . .

**Q:      Did . . . Wisler appear to have a hold of [] Long's testicle when [] Long struck him three times in the face?**

A:      I couldn't tell, I had no visual on [] Wisler's hands or [] Long's private parts.

Exhibit H at 18-21.

The above testimony is not entirely clear and is subject to various interpretations.  Since this is a summary judgment motion, the Court must view and interpret this critical evidence in the light most favorable to Wisler.  So viewing the testimony, Logue indicates more than that he simply did not see Wisler grab Long's testicle.  It does appear that there were times when Logue did not see Wisler's hand due to positioning and his efforts to flip Wisler.  However, Logue states that one of Wisler's hands was behind Wisler's back, he saw Wisler's hand come out from behind Wisler's back, and the hand came out from behind Wisler's back after Long punched Wisler three times.  Even when Logue testified that he did not know where Wisler's other hand was, he assumed it was behind Wisler's back "because that's where it came out of."  See id.  If Wisler was on his back with his right hand pinned down against his chest, and Logue saw Wisler's left hand come out from behind Wisler's back after Long punched Wisler, this indicates that Wisler's left arm was behind Wisler's back at the time the punches were thrown.  If Wisler's right arm was pinned by Long, and Wisler's left arm was behind him, then Wisler could not have grabbed Long by the testicle.

Additionally, Logue did not mention that Wisler had grabbed Long by the testicle in Logue's police report.  See Coleman Exhibit F.  Instead, Logue's report states that Long struck Wisler to gain compliance, not as a reaction to pain/an assault, and Logue's report was written after Long told him that Wisler had grabbed Long's testicle.  See id. ("The subject was not complying with any of our commands at all, at which time, Officer Long applied three fist strikes to the upper head portion of the subject in order to gain compliance from the subject.");  Logue

15

Depo. at 31.  .

There is certainly evidence that Wisler did in fact grab Long by the testicle – Long reported that Wisler grabbed his testicle to Logue, Jones, and his supervising sergeant, Long testified in these proceedings that Wisler grabbed him, Jones and Logue declare that they saw Long walk away from Wisler bent over and holding his groin, Jones declares that the color had gone from Long, and an injury report was created.[17]  However, this evidence is based primarily on Long's own conduct and statements, and neither Logue, nor Jones, nor Long's supervising sergeant saw Wisler grab Long's testicle.  Simply stated, Logue's DMV testimony, along with his police report, casts doubt about whether Wisler grabbed Long's testicle.

In light of the above, and viewing the evidence in the light most favorable to Wisler as the non-moving party, a reasonable jury could conclude that Wisler did not grab Long by the testicle.  Defendants' arguments that there was no excessive force when Long punched Wisler and, alternatively, that Long is entitled to qualified immunity are each based on the premise that Wisler grabbed Long by the testicle and inflicted significant pain on Long.[18]  Since that critical fact is in dispute, the Court cannot grant either summary judgment or qualified immunity with respect to Long's punches.

## III.    *Monell* Liability

### *Defendants' Argument*

Defendants argue that there is no evidence that either a constitutional violation occurred or that Fresno has a policy, practice or custom of using excessive force.  Fresno officers are

---

[17]It does not appear that Long's testicle was examined for injury.  See Castro Declaration and Castro Exhibits filed under seal.

[18]The Court notes that in its opposition, Plaintiff states without citation to any authority that the pain endured by Long is irrelevant to the force used to counteract it.  See Plaintiff's Opposition at 13.  This position is simply not true.  The infliction of pain is a form of force and can be used to gain control over an individual.  See Jennings v. Jones, 499 F.3d 2, 29 (1st Cir. 2007).  A suspect's infliction of pain on an officer can place the suspect in a dominant and controlling position over the officer and potentially compromise the officer's physical well-being.  In terms of the *Graham* framework for evaluating the reasonableness of force, the amount of pain a suspect is inflicting on an officer is properly consider under the second factor: the threat the suspect poses to the officer's safety.  See Graham v. Connor, 490 U.S. 386, 396 (1989).

1  trained in accordance with POST standards and Fresno's use of force policy is consistent with

2  state and federal law.  Reliance only on Long's conduct, assuming that it was improper, is a

3  single incident that does not a show a custom, policy, or practice.

4          *Plaintiff's Opposition*

5          Wisler argues that there is sufficient evidence for *Monell* liability.  The evidence shows

6  that Long used excessive force in effecting the arrest.  Wisler also states that he is alleging that

7  Fresno has a policy of not adequately investigating incidents of alleged excessive force.  Wisler

8  states that there is no evidence that Fresno disciplined Long, and Wisler's expert opines that the

9  failure of Fresno to adopt new policies or procedures indicates an act of ratification.

10         *Legal Standard*

11         Municipalities are considered "persons" under 42 U.S.C. § 1983 and therefore may be

12  liable for causing a constitutional deprivation.  Monell v. Department of Soc. Servs., 436 U.S.

13  658, 690 (1978); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006).  A

14  municipality, however, "cannot be held liable solely because it employs a tortfeasor – or, in other

15  words, a municipality cannot be held liable under [42 U.S.C. § 1983] under a *respondeat*

16  *superior* theory."  Monell, 436 U.S. at 691; see Long, 442 F.3d at 1185; Ulrich v. City & County

17  of San Francisco, 308 F.3d 968, 984 (9th Cir. 2002).  Further, if "no constitutional violation

18  occurred, the municipality cannot be held liable."  Long, 511 F.3d at 907 (citing City of Los

19  Angeles v. Heller, 475 U.S. 796, 799 (1986)); see Gregory v. County of Maui, 523 F.3d 1103,

20  1109 (9th Cir. 2008); Jackson v. City of Bremerton, 268 F.3d 646, 653 (9th Cir. 2001).  Liability

21  only attaches where the municipality itself causes the constitutional violation through "execution

22  of a government's policy or custom, whether made by its lawmakers or by those whose edicts or

23  acts may fairly be said to represent official policy."  Monell, 436 U.S. at 694; Ulrich, 308 F.3d at

24  984.  A "policy" is a deliberate choice to follow a course of action . . . made from among various

25  alternatives by the official or officials responsible for establishing final policy with respect to the

26  subject matter in question."  Long, 442 F.3d at 1185.  A policy or custom under *Monell* may be

27  shown through:  (1) a longstanding practice or custom which constitutes the 'standard operating

28  procedure' of the local government entity; (2) the decision of a decision-making official who

was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (3) an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate.  Menotti v. City of Seattle, 409 F.3d 1113, 1147 (9th Cir. 2005); Ulrich, 308 F.3d at 984-85.  "To show ratification, a plaintiff must show that an "official with final policy-making authority ratified a subordinate's decision or action and the basis for it."  Trevino v. Gates, 99 F.3d 911, 920 (9th Cir. 1996).  "The policymaker must have knowledge of the constitutional violation and actually approve of it," and a "mere failure to overrule a subordinate's actions, without more, is insufficient to support a § 1983 claim."  Lytle v. Carl, 382 F.3d 978, 987 (9th Cir. 2004); see also Haugen v. Brosseau, 351 F.3d 372, 393 (9th Cir. 2003).

However, a "plaintiff cannot demonstrate the existence of a municipal policy or custom based solely on a single occurrence of unconstitutional action by a non-policymaking employee." McDade v. West, 223 F.3d 1135, 1141 (9th Cir. 2000).  "[A]dequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the [municipality] liable."  City of Canton v. Harris, 489 U.S. 378, 391 (1989); see Case v. Kitsap County Sheriff's Dep't, 249 F.3d 921, 931-32 (9th Cir. 2001) (". . . nor can liability be predicated on the isolated sporadic events in this case."); Merritt v. County of Los Angeles, 875 F.2d 765, 770 (9th Cir. 1989) ("Mere proof of a single incident of errant behavior is a clearly insufficient basis for imposing liability on the County.").

When a plaintiff alleges that a municipality failed to act to preserve constitutional rights, the plaintiff must show: (1) the deprivation of a constitutional right; (2) that the municipality had a policy; (3) the policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation.  Van Ort v. Estate of Stanewich, 92 F.3d 831, 835 (9th Cir. 1998); see Gibson v. County of Washoe, 290 F.3d 1175, 1185-86 (9th Cir. 2002); see also Biberdorf v. Oregon, 243 F.Supp.2d 1145, 1155 (D. Or. 2007). A municipality is "deliberately indifferent" when the need for more or different action, "is so obvious, and the inadequacy [of the current procedure] so likely to result in the violation of constitutional rights, that the policymakers … can reasonably be said to have been deliberately

18

1   indifferent to the need." City of Canton, 489 U.S. at 391; Lee v. City of Los Angeles, 250 F.3d

2   668, 681 (9th Cir. 2001).

3        *Discussion*

4        With respect Long's conduct in removing Wisler from the car, placing him on the ground,

5   and struggling to handcuff him (with the exception of the punches), the Court has found that the

6   Fourth Amendment was not violated.[19]   Since this conduct did not violate the Constitution, it

7   cannot be a basis for municipal liability.  See Heller, 475 U.S. 796, 799; Gregory, 523 F.3d at

8   1109; Long, 511 F.3d at 907; Jackson, 268 F.3d at 653.

9        However, as discussed above, the evidence viewed in the light most favorable to Wisler

10  suggests that excessive force was used when Long punched Wisler three times in the face

11  because Wisler did not grab Long's testicle.  Nevertheless, Wisler has not shown the existence of

12  a policy that caused him harm.  There is no dispute that Fresno's "use of force" policy is lawful.

13  See DUMF No. 33.  Further, there is no dispute that Fresno officers receive on-going training

14  that complies with POST.  See DUMF No. 32.  Wisler has cited no evidence of other similar

15  excessive force instances, and pointing to Long's conduct is relying on the isolated and sporadic

16  events of this single occurrence.  That is insufficient for *Monell* liability.  See City of Canton,

17  489 U.S. at 391; Case, 249 F.3d at 931-32; McDade, 223 F.3d at 1141; Merritt, 875 F.2d at 770.

18       Wisler appears to argue that there is a policy of not adequately investigating excessive

19  force claims.  However, it is undisputed that Fresno has a policy of administratively investigating

20  its police officers' use of force.  See DUMF No. 34.  The only basis for Wisler's contention is

21  what happened in this individual case.  Again, relying on this single occurrence will not form the

22  basis of a custom or policy.  See City of Canton, 489 U.S. at 391; Case, 249 F.3d at 931-32;

23  McDade, 223 F.3d at 1141; Merritt, 875 F.2d at 770.

24       Finally, Wisler relies on the opinion of his expert that Fresno appears to have ratified

25  Long's excessive force because no discipline occurred and no new policies have been

26

27       [19]The same analysis would apply to Logue, who helped Long remove Wisler from the car, place Wisler on

28  the ground, and then tried to flip Wisler over.   The same is also true of Jones, who appears to have only tried to
    control Wisler's feet.

formulated.  However, there is no evidence that a final policy-making officer of Fresno approved of Long's conduct and the basis for it, which is required for ratification.  See Lytle, 382 F.3d at 987; Trevino, 99 F.3d at 920.  That Long's superiors did not discipline him says nothing about the conduct of final policy making officials.  See Haugen, 351 F.3d at 393 (". . . there are no facts in the record that suggest that the single failure to discipline [the officer] rises to the level of . . . ratification.").  Fresno has a policy of investigating instances when its officers use force in order to determine whether the force used was reasonable.  See DUMF No. 34.  A single instance of an investigation that does not lead to discipline is an isolated incident that does not show a custom or policy of failing to discipline.  See Haugen, 351 F.3d at 393; Santiago v. Fenton, 891 F.2d 373, 382 (1st Cir. 1989). Wisler's expert is only examining the events of this single case and impermissibly extrapolating a custom or policy by Fresno.  Cf. City of Canton, 489 U.S. at 391; Case, 249 F.3d at 931-32; McDade, 223 F.3d at 1141; Merritt, 875 F.2d at 770 with Clark Declaration ¶ 11 ("The officers' failure to use accepted and required methods is indicative of a pattern and practice contrary to policy, law, and POST standards and training.").  Additionally, there has been no showing that any of Fresno's existing policies are infirm or that the failure to adopt different policies shows deliberate indifference by Fresno.  See City of Canton, 489 U.S. at 391; Gibson, 290 F.3d at 1185-86; Van Ort, 92 F.3d at 835.

Wisler has failed to sufficiently show any culpable policies or practices by Fresno that can sufficiently form the basis of *Monell* liability.  Instead, Wisler is impermissibly focusing solely on the events of this single, isolated, sporadic case and attempting to create a policy or custom.  See City of Canton, 489 U.S. at 391; Haugen, 351 F.3d at 393; Case, 249 F.3d at 931-32; McDade, 223 F.3d at 1141; Merritt, 875 F.2d at 770.  Summary judgment in favor of Fresno on Wisler's *Monell* claim will be granted.

## III.     State Law Claims

Wisler has brought a state law assault and battery claim against Long.  Battery is a state law tort counterpart to a 42 U.S.C. §1983 excessive force claim.  See Munoz v. City of Union City, 120 Cal.App.4th 1077, 1102 n.6 (2004); Edson v. City of Anaheim, 63 Cal.App.4th 1269,

1274 (1998).  Where a court finds that an officer has utilized reasonable force for a 42 U.S.C. §
1983 claim, the corresponding state law battery claim must also fail.  See Arpin v. Sant Clara
Valley Transp. Agency, 261 F.3d 912, 922 (9th Cir. 2002); Saman v. Robbins, 173 F.3d 1150,
1156 n.6 (9th Cir. 1999).  Here, Long essentially reiterates his argument that the force he utilized
against Wisler was reasonable.  For the reasons explained above, Long utilized reasonable force
in removing Wisler from the car, placing him on the ground and attempting to handcuff him;
there is no battery from this conduct.  See Arpin, 261 F.3d at 922; Saman, 173 F.3d at 1156 n.6.
However, as explained above, there is a genuine dispute whether Wisler grabbed Long's testicle.
Since the reasonableness of Long's punches is dependent upon whether Wisler grabbed Long's
testicle/assaulted Long, the Court cannot grant summary judgment on Wisler's battery claim for
Long's punches to Wisler's face.

With respect to Wisler's negligence claim, Wisler has failed to identify a statute that
provides for *direct liability* against Fresno.  Summary judgment in favor of Fresno on a *direct
liability* negligence theory will be granted.  See Munoz 120 Cal.App.4th at 1112-13.  However,
Fresno acknowledges that it can be held *vicariously liable* for negligent conduct by Long that
was done in the course and scope of his employment.  See Cal. Gov. Code § 815.2; Eastburn v.
Regional Fire Protection Authority, 31 Cal.4th 1175, 1180 (2003); Defendants' Reply at 10.
Because the reasonableness of Long's conduct hinges on whether Wisler assaulted Long by
grabbing Long's testicle, and the Court has found that a genuine dispute exists on this issue,
summary judgment is not appropriate on a *vicarious liability* negligence claim.


**IV.    Punitive Damages**[20]

Punitive damages are authorized in a 42 U.S.C. §1983 claim if a defendant's conduct was
malicious, oppressive, or in reckless disregard for a plaintiff's rights.  See Smith v. Wade, 461
U.S. 30, 56 (1983); Dang v. Cross, 422 F.3d 800, 806-09 (9th Cir. 2005); Ninth Circuit Model
Instr. No. 5.5.  Under California state law, punitive damages are authorized if a plaintiff can

---

[20]Punitive damages are only sought against Long.

show by clear and convincing evidence that a defendant acted with malice, oppression, or fraud. See Cal. Civ. Code § 3294(a).  Under California law, "malice" means *inter alia* "conduct which is intended by the Defendant to cause injury to the plaintiff . . . ."  Cal. Civ. Code § 3294(c)(1); Lackner v. North, 135 Cal.App.4th 1188, 1210, 1212 (2006).  The higher "clear and convincing evidence" standard applies at the summary judgment stage.  Brandon v. Rite Aid Corp., 408 F.Supp.2d 964, 981 (E.D. Cal. 2006).

Long argues that there is no evidence of malice, fraud, oppression, or a reckless disregard for Wisler's rights because Long was only reacting to Wisler's assault and the pain being inflicted by Wisler.  However, as discussed above, there is a dispute whether Wisler assaulted Long.  If Wisler did not grab Long's testicle, then the rationale relied upon by Long to justify his punches to Wisler's face vanishes.  Without the assault, a jury could infer malice or a reckless disregard for Wisler's rights.  Because there is a genuine dispute whether Wisler assaulted Long, the Court cannot grant summary judgment on Wisler's request for punitive damages.

## CONCLUSION

Defendants move for summary judgment on all claims against them. Initially, there is no *Heck* bar to Wisler's complaint because there is conduct that occurred prior to Long punching Wisler that could support Wisler's conviction under Penal Code § 148(a).

Other than the *Heck* bar, Defendants' summary judgment motion is premised largely on the notion that Wisler committed an assault on Long by grabbing Long's testicle, thereby inflicting severe pain on Long, and justifying punches to Wisler's face.  However, viewed in the light most favorable to Wisler as the non-moving party, Logue's DMV testimony suggests that Wisler's right hand was pinned against his chest and his left hand was behind his back at the time Long struck him.  If Wisler's hands were so positioned, this indicates that Wisler did not grab Long's testicle.  While there is certainly evidence to support a finding that Wisler grabbed Long's testicle and inflicted significant pain, a jury could view Logue's DMV testimony, combined with Logue's police report/narrative, and conclude that Wisler did not assault Long. Since Long's basis for punching Wisler is in dispute, summary judgment cannot be granted for

Long on Wisler's 42 U.S.C. § 1983 excessive force claim, state law battery claim, state law negligence claim, or punitive damages request, nor can the Court grant Long qualified immunity.

However, to the extent that Wisler argues that his arrest was unreasonable because Long removed Wisler from the car, placed him on the ground, and struggled to place handcuffs on him, Long's conduct was reasonable under the Fourth Amendment. Summary judgment in favor of Long on this conduct will be granted.

With respect to Fresno, since Long did not violate the Constitution in removing Wisler from the car, placing him on the ground, and struggling to handcuff him (excepting the punches), there can be no municipal liability. As for Long's punches to Wisler's face, there is no *Monell* liability because Wisler is improperly attempting to extrapolate a custom or policy based only on the isolated and sporadic circumstances of this single case. Further, there is insufficient evidence of ratification. In other words, Wisler has not sufficiently shown a custom or policy.

With respect to negligence, because Wisler has not identified a statute that imposes a duty on Fresno, summary judgment will be granted for any *direct liability* negligence. However, because the reasonableness of Long's conduct cannot be decided on summary judgment, summary judgment must be denied on Wisler's *vicarious liability* claim against Fresno.

Accordingly, IT IS HEREBY ORDERED that Defendants' motion for summary judgment is GRANTED in part and DENIED in part in that:

1.    Summary judgment on Plaintiff's 42 U.S.C. § 1983 excessive force claim against Defendant Long based on Long's three punches is DENIED;

2.    Summary judgment on Plaintiff's 42 U.S.C. § 1983 excessive force claim against Defendant Long based on Long's removing Plaintiff from the car, placing him on the grand, and handcuffing him is GRANTED;

3.    Summary judgment on Plaintiff's 42 U.S.C. § 1983 *Monell* claim against the City of Fresno is GRANTED;

4.    Summary judgment on Plaintiff's assault and battery claim is DENIED;

5.    Summary judgment on Plaintiff's direct liability negligence claim against the City of

1    Fresno is GRANTED;

2    6.    Summary judgment on Plaintiff's negligence claim against Defendant Long is DENIED;

3    7.    Summary judgment on Plaintiff's vicarious liability claim against the City of Fresno is

4          DENIED; and

5    8.    Summary judgment on Plaintiff's request for punitive damages is DENIED.

6

7    IT IS SO ORDERED.

8    **Dated:    June 24, 2008**                          /s/ Anthony W. Ishii
                                              UNITED STATES CHIEF DISTRICT JUDGE