IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RICHARD ALLEN WISLER,** | CV F 06-1694 LJO SMS |
| Plaintiff, | ORDER VACATING HEARING AND ORDER ON THE PARTIES' DAMAGES MOTIONS IN LIMINE |
| v. | |
| **CITY OF FRESNO, et al,** | Doc. Nos. 60, 61. |
| Defendants. | |

Pursuant to the pre-trial order, Defendants the City of Fresno ("Fresno") and Police Officer Jonathan Long ("Long") (collectively "Defendants") and Plaintiff Richard Wisler ("Wisler") have filed motions in limine with respect to the damages phase of the trial. Hearing on these motions is currently to occur while the jury deliberates in the liability phase of trial. After considering the submissions of the parties, the Court will vacate the hearing and issue the following order on the parties' motions.

### I. PLAINTIFF'S DAMAGES MOTIONS IN LIMINE

**1.  MOTION IN LIMINE No. 1:**

**Evidence of a sexual harassment claim brought against Wisler by a co-worker**

*Plaintiff's Argument*

Wisler requests preclusion under Rules of Evidence 401 and 403 of evidence regarding a

sexual harassment claim made against him by a co-worker. Between July and October of 2002, Wisler was accused of making unwanted and discourteous remarks. The claim resulted in Wisler being moved to a new location and receiving a 10 month pay deduction, but he continues to deny the accusations. The incident has no relevance regarding Wisler's ability to work.

*Defendants' Opposition*

Defendants argue that the investigation into the 2002 sexual harassment accusation was sustained and Wisler suffered a 10 month pay deduction. They should be allowed to ask whether he has had his pay reduced and the reason for the deduction. Given his history at Cal Trans, which includes a violation of the sexual harassment policy, a jury could conclude that Wisler may not have maintained his job, irrespective of his eye injury.

*Resolution*

The harassment claim was made in 2002. Six years have now passed and Wisler is still employed with Cal Trans. If his job had been in jeopardy from the incident, it would appear that after six years that jeopardy has passed. Unless there is testimony from a Cal Trans supervisor/manager that the 2002 sexual harassment claim may still cause Wisler's job to be in jeopardy, or that Cal Trans would consider the 2002 sexual harassment claim in making further employment decisions about Wisler, then the 2002 claim is too remote in time and the danger of unfair prejudice to Wisler is substantially outweighed by the evidence's probative value. See Fed. Rs. Evid. 401, 403. However, Wisler is claiming that he would still be fully able to perform his job and would have continued to work at Cal Trans for the foreseeable future, but for Long's punches. Wisler's work history/Cal Trans's evaluation of Wisler as an employee is highly probative of whether Wisler would have continued his employment. If a Cal Trans supervisor/manager can testify that Wisler is still in jeopardy from the 2002 claim, or that Cal Trans will continue to review and consider the 2002 claim in making employment decisions about Wisler, then the danger of unfair prejudice will not sufficiently outweigh the probative value of the 2002 harassment claim.

Accordingly, this motion in limine is conditionally GRANTED.

**2.    MOTION IN LIMINE No. 2:**

**Evidence that Wisler was suspected by co-workers of drinking on the job**

*Plaintiff' Argument*

Pursuant to Rules of Evidence 401 and 403, Wisler seeks preclusion of evidence that certain co-workers suspected Wisler of being intoxicated at work. Specifically, Terry Ogle (who supervised Wisler from 2000 to 2003) believed that Wisler was intoxicated since Wisler had a flushed face, would sweat, had glazed eyes, and smelled heavily of aftershave. However, Ogle never directly confronted Wisler, prepared any letters of warning, never recommended that Wisler be terminated, and prepared no written documents indicating that Wisler had come to work intoxicated. Also, Benjamin Carmena (who supervised Wisler from late 2002 to early 2005) stated that he believed he detected the odor of alcohol on Wisler's breath and that Wisler had bouts of drowsiness and falling asleep at his desk. However, Carmena knew that Wisler was on medication (to which he attributed the drowsiness) and, in the last year, Carmena has not detected any odor of alcohol nor seen Wisler asleep. Other supervisors (El-Dahabi and Mahfoud) have not detected alcohol on Wisler, nor been informed or otherwise been made aware of Wisler drinking on the job. In short, "it was never alleged that [Wisler] was drinking while at work, and the assumption was never substantiated."

*Defendants' Opposition*

Defendants argue that Ogle suspected Wisler of regularly being intoxicated at work due to Wisler's appearance. Ogle testified that he discussed his concerns over Wisler with a supervisor and it was determined that Wisler was never to drive a state vehicle. Carmena testified that Wisler smelled of alcohol at work on a number of occasions and believed that Wisler was coming to work drunk. Carmena also spoke with his supervisor about Wisler. The testimony of Ogle and Carmena are based on daily contact, assessments, and observations. They evaluated his performance and talked to him about problems. Their testimony is relevant.

*Resolution*

Assessments from Wisler's supervisors are relevant to damages. Nevertheless, although Ogle and Carmena may have discussed Wisler's being drunk with their supervisor, it does not

3

appear that anything resulted from these conversations. From the submissions of the parties, it does not appear that any charges or warnings were ever noted in Wisler's file or brought against Wisler. In other words, there is apparently no documentation with Cal Trans that Wisler was believed to be coming to work drunk. Further, Wisler apparently was not disciplined for coming to work drunk. The undocumented and unsubstantiated suppositions of Ogle and Carmena do not show that Wisler's job was in danger. In the absence of documentation or testimony from a sufficiently high level Cal Trans manager that Wisler's job was or is in jeopardy because he comes or came to work drunk, Carmena's and Ogle's testimony is unduly prejudicial. See Fed. R. Evid. 403.

Accordingly, this motion in limine is conditionally GRANTED.

**3.   MOTION IN LIMINE No. 3:**

**Evidence of prior incidents where Wisler allegedly was drunk and may have sought medical treatment**

*Plaintiff's Argument*

Over five years prior to his encounter with Long, Wisler was taken to a hospital by ambulance after police were called to his residence due to complications with medications. Wisler was hospitalized for two to three days. Also, Wisler's father testified about an incident where Wisler collapsed at an event in San Diego and went to a hospital. Wisler's father was not told that the collapse was alcohol related. Also, Wisler's wife recalled an incident about 5 to 7 years prior to her deposition in which Wisler called the police due to hallucinations from medication. Also, Wisler's wife testified that she did not recall instances in 1998 and 1999 wherein Wisler fell and injured his nose and eyes, possibly while drinking.[1] These incidents, which Defendants may attempt to classify as alcohol related, all occurred years before the incident with Long. There is no dispute that Wisler has a history of alcoholism, but there is also no dispute that Wisler has been employed gainfully for many years. These incidents shed no

---

[1] There is absolutely no further elaboration about the 1998 and 1999 "falling" incidents, and the Court knows nothing about them other than that Wisler's wife has no recollection.

4

light on the issues in this case and are confusing, unduly prejudicial, and a waste of time.

*Defendants' Opposition*

Defense experts, Drs. Seymour and Koobatian, have reviewed documents, conducted research, interviewed Wisler, and formed opinions about Wisler. If these opinions are attacked or the basis for the opinions questioned, then testimony should be allowed regarding the basis for the opinions, including specific incidents. See Fed. R. Evid. 703. Also, certain incidents may be relevant as to Wisler's credibility. For example, in applying for employment with Cal Trans, Wisler denied having a history of drug and alcohol abuse. Defendants are entitled to question Wisler about false information he gave to his employer.

*Resolution*

The incidents identified by Wisler are not specifically addressed by Defendants, rather only a generalized Rule 703 argument is made. Based on Wisler's representations, it appears that each incident he identifies occurred at least five years prior to his encounter with Long. Further, none of these incidents appear to have occurred at or in connection with work. Wisler has never denied that he has had an alcoholism problem, and he admits that he was drunk during the incident with Long. These appear to be older incidents that may or may not be alcohol related, but that apparently did not affect Wisler's work. Thus, they have little if any relevance to the issue of Wisler's damages. At this point, any probative value that these incidents may have is substantially outweighed by the danger of undue prejudice, confusion, and unnecessary consumption of court time. See Fed. R. Evid. 403.

With respect to the Cal Trans questionnaire in which Wisler denied alcohol abuse, that evidence appears to be nearly ten years old. The drug or alcohol problems Wisler may have had at the time of his application are remote in time. For nearly ten years, Wisler has been employed by Cal Trans and he admits that he has had a problem with alcoholism. Any relevance that this remote evidence may have is substantially outweighed by the danger of unfair prejudice. See Fed. R. Evid. 403.

With respect to the opinions of Drs. Seymour and Koobatian, their opinions are not the subject of this motion in limine. Nevertheless, the opposition indicates that these incidents may

have helped form the basis of the experts' opinions and that Defendants may wish to offer those facts as rebuttal evidence. The commentary to the 2000 amendments of Rule 703 reads in relevant part:

> Nothing in this Rule restricts the presentation of underlying expert facts or data when offered by an adverse party. Of course, an adversary's attack on an expert's basis will often open the door to a proponent's rebuttal with information that was reasonably relied upon by the expert, even if that information would not have been discloseable initially under the balancing test provided by this amendment.

Advisory Committee Commentary to 2000 Amendments to Fed. R. Evid. 703.[2]

The Rule 703 commentary suggests that, if the defense experts' opinions are relevant and reliable, and the experts reasonably relied on the incidents identified by Wisler, then those incidents may be admissible in rebuttal for the limited purpose of assessing the experts' opinions. See id. However, at this point, there has been an insufficient showing that the incidents were reasonably relied upon by Drs. Seymour and Kabootian for purposes of Rule 703.

Accordingly, this motion in limine is GRANTED. Defendants may not present evidence in their case in chief, or on cross-examination of Wisler's witnesses, about the incidents identified by Wisler in this motion. See Fed. R. Evid. 403. Further, at this point, an insufficient showing has been made to justify admission of this evidence as rebuttal under Rule 703.

**4.     MOTION IN LIMINE No. 4:**

**Evidence or speculation from any witness that Wisler may be terminated in the future because of his drinking or job performance**

*Plaintiff's Argument*

Wisler argues that it would be pure speculation to allow any of Defendants' experts to testify that he would not have continued to be employed by Cal Trans. Such an opinion would

---

[2]Rule of Evidence 703 reads in its entirety:

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted. Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

depend on whether Wisler would have continued to drink, and Wisler has been clean and sober for 10 months. Dr. Witten treated Wisler's injuries. Dr. Witten indicated that, at the time of initial examination, Wisler would be ineffective at work, but Dr. Witten did not give an opinion as to future employability. Additionally, Dr. Koobatian only evaluated Wisler for this case and as a defense expert. He testified that if Wisler relapses, it could greatly impact his future employability.

*Defendants' Opposition*

Defendants argue that Dr. Koobatian is a qualified vocational rehabilitation expert. He reviewed depositions, various records, and interviewed Wisler for about 2 hours. His opinions are based on extensive training and experience, and his opinions are not speculative. Dr. Koobatian opined:

> [I]t would be speculative, based on a reasonable vocational probability, that Wisler would have continued to work at this level of employability and earning capacity for the remainder of his work life in view of his troubled past. The record reflects a history of severe alcoholism and other personnel issues prior to the February 4, 2006, incident, leaving one to question and to greatly speculate as to whether or not [Wisler] would have continued to work full time at this level of pay/benefits.

This opinion is reliable and should not be excluded.

*Resolution*

Whether Wisler would have continued to work for Cal Trans on a full time basis and for an extended period of time is a question that requires some degree of speculation. In answering that question, the trier of fact can consider many pieces of evidence, including Wisler's attitude towards his position at Cal Trans, Cal Trans's policies, and Wisler's work history/Cal Trans's evaluation of Wisler as an employee. Defendants indicate that Wisler has a history of severe alcoholism and other issues. However, no evidence has been identified that Wisler recently has been exhibiting conduct that would jeopardize his job. Before a witness may testify that Wisler would likely not have retained his job, there must be recent evidence (close and prior to February 4, 2006, or recent conduct unrelated to his eye injury)[3] from Cal Trans that Wisler's behavior was

---

[3] As discussed above under motion in limine 2, Ogle's and Carmena's testimony that they suspected that Wisler was drinking on the job is alone not sufficient.

1  placing his job in jeopardy.  Without such recent evidence, an opinion that Wisler would have
2  lost his job relies too heavily on older conduct, and is therefore unduly speculative and unhelpful.
3  See Fed. R. Evid. 403, 702.  At this point, the jury will conclude from the totality of the evidence
4  whether Wisler would or would not have retained his job, but will do so without the aide of a
5  witness's direct answer to the question.
6       Accordingly, this motion in limine is conditionally GRANTED.

8  **5.     MOTION IN LIMINE NO. 5:**
9  **Evidence of Wisler's past drug use**
10       *Plaintiff's Argument*
11       Wisler argues that Carol Gifford is a licensed therapist who treated him while he was
12  enrolled in an in patient facility.  Gifford testified that there is no significance to the fact that
13  Wisler used both alcohol and marijuana a few days prior to entering the program.  Wisler
14  indicated to Gifford that he had used marijuana.  There is no evidence that Wisler had used
15  marijuana on the night in question.  Admission of prior marijuana use should be excluded as
16  unduly prejudicial.
17       *Defendants' Argument*
18       Defendants argue that Wisler admits that he was using marijuana before and after the
19  confrontation with Long.  He now claims substantial damages and that he can only work 2 hours
20  per day.  In evaluating the potential for future employment, jurors should hear evidence of
21  Wisler's drug use.  Wisler's history of drug use, as well as his history of entering rehab programs
22  and relapsing, are relevant to his ability to hold down a job.  Further, Wisler denied any history of
23  substance abuse in his employment questionnaire.  Wisler's credibility is critical and Defendants
24  should be allowed to explore the issue.
25       *Resolution*
26       As a general proposition, one's drug use would appear to be relevant to one's ability to
27  perform a job.  However, very little has been communicated to the Court regarding Wisler's
28  particular drug use.  There is no significant discussion about how often Wisler used marijuana,

entered rehab or suffered relapses.  Critically, there is no discussion of how marijuana use affected Wisler's job performance or whether Wisler's marijuana use would physically affect his ability to keep his job.  For example, there is no indication that marijuana use/entering rehab caused Wisler to take excessive time off.  Without a discussion of how marijuana use actually affected Wisler's job performance or competent testimony that marijuana would physically affect Wisler's ability to keep his job, evidence that Wisler used marijuana is unduly prejudicial.  See Fed. R. Evid. 403.

Accordingly, this motion in limine is conditionally GRANTED.

**6.    MOTION IN LIMINE No. 6:**

**Evidence of the hospitalization of Wisler's son**

*Plaintiff's Argument*

Wisler testified that his son was in the hospital with a ruptured appendix on February 4, 2006.  Wisler's wife had taken their son to the hospital, had spoken to Wisler, but felt that it was unnecessary for Wisler to be at the hospital since they were still in the waiting room.  The fact that the son was in the hospital is irrelevant.

*Defendants' Opposition*

Wisler testified that he suffered emotional pain from his injury and post surgical procedures, including "shock and injury to [his] nervous system, humiliation, . . . mental anguish, acute anxiety . . . ."  However, Wisler's son was in the hospital at the time of this incident and for one week thereafter with a life threatening condition.  Several weeks later, the son underwent surgery.  This indicates that Wisler's emotional pain and anxiety were related, at least in part, to his son's condition.

*Resolution*

The Court agrees with Defendants.  The son's hospitalization is very close in time to Wisler's confrontation with Long.  That one's son is in the hospital and requires surgery due to a life threatening condition would clearly be a source of distress and anxiety to any dutiful parent.  The jury will have to allocate what amount of emotional distress was caused by Wisler's injuries

and what amount was caused by the hospitalization of his son.

Accordingly, this motion in limine is DENIED.

**7.    MOTION IN LIMINE No. 7:**

**Exclude evidence from Dr. Seymour that Wisler is manipulative or trying to use this action for secondary gain**

*Plaintiff's Argument*

Wisler wishes to exclude the opinion that he "appears to have seen an opportunity to secure a lifestyle more to his liking.  He could leave his job with the State, possibly as disabled with associated income, and he could live a life with limited responsibility." Seymour's evaluation was ostensibly to determine whether Wisler had sustained emotional distress.  This opinion is beyond the scope of that evaluation.  Although Dr. Seymour may express an opinion on whether Wisler suffered emotional distress, the remainder of his opinions are speculative and should be excluded.

*Defendants' Opposition*

Dr. Seymour is a licensed clinical psychologist who evaluated Wisler regarding his damages claims.  Defendants do not intend to solicit testimony that Wisler appears to see an opportunity to acquire a better lifestyle.  However, as part of his testing and evaluation of Wisler, Dr. Seymour concluded that Wisler's responses were typical of those who are trying to manipulate the personality profile.  Further, Dr. Seymour's impressions are consistent with observations by Wisler's treating physician that Wisler's complaints are inconsistent, that visual acuity fluctuates with motivation, and that Wisler was faking at certain times.  Wisler himself told a rehab counselor that he was in a boring, dead-end job, that he did not want to return to work until after his temporary disability was completed, and that he wanted to change jobs.  Dr. Seymour's opinions regarding manipulation and malingering are relevant to whether Wisler is really disabled or able to perform regular job duties.

*Resolution*

Defendants state that they do not intend to solicit the opinion that Wisler sees an

opportunity to attain a better life for himself.  Accordingly, that opinion will not be allowed.

However, the remainder of Seymour's opinions are relevant and will be admitted.  Dr. Seymour's opinions that Wisler malingers and is attempting to manipulate tests is based on reviewing depositions and records, a psychological test on Wisler, and an interview with Wisler.  There is no argument that Dr. Seymour is not a qualified clinical psychologist, nor is there any argument that Dr. Seymour's methodology in evaluating Wisler was unreliable.  Wisler claims that he can work at Cal Trans for only two hours per day due to Long's conduct.  Dr. Seymour's opinions would be helpful to a jury in determining whether Wisler can only work two hours a day at Cal Trans.  See Fed. R. Evid. 702.  Wisler has not sufficiently shown that Dr. Seymour's opinions are unreliable speculation.

Accordingly, this motion in limine will be GRANTED with respect to Dr. Seymour's opinion that Wisler sees an opportunity for obtaining a better lifestyle, but is otherwise DENIED.

## II.     DEFENDANTS' DAMAGES MOTIONS IN LIMINE

**1.     MOTION IN LIMINE No. 1:**

**Improper comments relating to damages (the "Golden Rule Argument")**

Defendants seek to preclude Wisler from arguing that the jurors should base a damages award on the amount they themselves would charge in order to endure similar injuries, i.e. putting the jurors in Wisler's shoes.  See, e.g., Lovett v. Union Pac. R.R., 201 F.3d 1074, 1083 (8th Cir. 2000).  Wisler has filed a notice of non-opposition.

Accordingly, this motion in limine is GRANTED.

**2.     MOTION IN LIMINE No. 2:**

**Prohibition against calling any damages witness not disclosed during discovery**

Defendants seek to preclude Wisler from calling witnesses who were not timely disclosed during discovery.  See Fed. R. Civ. Pro. 26; Wong v. Regents of the University of Cal., 410 F.3d 1052, 1062 (9th Cir. 2005).  In particular, Defendants seek to exclude testimony from Brett Cox, Karen Tani, Tony Zuniga, and Carol Bishop.  Wisler has filed a notice of non-opposition.

Accordingly, this motion in limine is GRANTED.

3. **MOTION IN LIMINE No. 3:**

   **Prohibiting Wisler's wife from testifying as to what Wisler told her about damage related issues**

   Wisler's wife, DeNila Wisler, claimed the spousal communication privilege during her deposition. Due to invocation of the privilege, DeNila should not be allowed to testify about information provided to her by Wisler regarding his damages. Wisler has filed a notice of non-opposition.

   Accordingly, this motion in limine is GRANTED.

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's motions in limine numbers 1, 2, 3, 4, and 5 are conditionally GRANTED;
2. Plaintiff's motions in limine number 6 is DENIED;
3. Plaintiff's motion in limine number 7 is GRANTED in part and DENIED in part;
4. All of Defendants' motions in limine (numbers 1, 2, and 3) are GRANTED; and
5. The hearing on the damages motions in limine that is currently scheduled to be held during the jury's liability deliberations is VACATED.

IT IS SO ORDERED.

Dated:   July 30, 2008                         /s/ Lawrence J. O'Neill
                                               UNITED STATES DISTRICT JUDGE